**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| ELAINE JOHNSON, *on behalf of herself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE SERVICES, INC.,<br><br>Defendant. | ) Civil Action No. 5:23-cv-522-GAP-PRL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# Table of Contents

Request for Relief ............................................................................................ 1

The Telephone Consumer Protection Act ("TCPA") ......................................... 1

Statement of Relevant Facts ............................................................................. 2

Standard ........................................................................................................... 6

Argument .......................................................................................................... 7

    I.    TCPA claims are well suited for class treatment. ..................................... 7

    II.   Ms. Johnson satisfies the requirements of Rule 23(a). .............................. 8

        A.    The class is so numerous that joinder of all members is impracticable. ................. 8

        B.    Questions of law and fact are common to all members of the class. .................... 10

        C.    Ms. Johnson's claims are typical of the claims of the members of the class. ........ 12

        D.    Ms. Johnson and GDR will protect the interests of the members of the class. ...... 13

    III.   Ms. Johnson satisfies the requirements of Rule 23(b). ........................................ 14

        A.    The questions of law and fact common to the members of the class predominate over any questions affecting only individual members. ........................................... 14

        B.    A class action is superior to other available methods for the fair and efficient adjudication of this matter. ...................................................................... 19

    IV.   The class is ascertainable. ............................................................................. 22

    V.   Ms. Johnson's proposed notice plan satisfies Rule 23(c)(2)(B). ............................ 24

Conclusion ........................................................................................................ 25

## Table of Authorities

**Cases**

*Abdeljalil v. Gen. Elec. Capital Corp.*,
　　306 F.R.D. 303 (S.D. Cal. 2015)……………….……………………………….17, 21

*Andreas-Moses v. Hartford Fire Ins. Co.*,
　　326 F.R.D. 309 (M.D. Fla. 2018)……………….…………………………19, 20

*Augustin v. Santander Consumer USA, Inc.*,
　　43 F. Supp. 3d 1251 (M.D. Fla. 2012)…………………………………………….15

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
　　591 U.S. 610 (2020)…………………………………………………………..25

*Birchmeier v. Caribbean Cruise Line, Inc.*,
　　302 F.R.D. 240 (N.D. Ill. 2014)……………………….…………………10, 11, 22

*Bonoan v. Adobe Inc.*,
　　No. 3:19-CV-01068-RS, 2020 WL 6018934 (N.D. Cal. Oct. 9, 2020)…………25

*Braver v. Northstar Alarm Servs., LLC*,
　　329 F.R.D. 320 (W.D. Okla. 2018)……………………………………………10

*Briseno v. ConAgra Foods, Inc.*,
　　844 F.3d 1121 (9th Cir. 2017)…………………………………………………..24

*Brown v. DirecTV, LLC*,
　　330 F.R.D. 260 (C.D. Cal. 2019)…………………………………………..22

*Brown v. DirecTV, LLC*,
　　562 F. Supp. 3d 590 (C.D. Cal. 2021)………………………….……………..8

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
　　299 F.R.D. 679 (S.D. Fla. 2014)……………………………………………….13

*Cabrera v. Gov't Emps. Ins. Co.*,
　　No. 12-61390-CIV, 2014 WL 11894430 (S.D. Fla. Sept. 29, 2014)…..……..10, 13

*Cherry v. Dometic Corp.*,
　　986 F.3d 1296 (11th Cir. 2021)……………………….………………………..23

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019)…………………………………………………2

*Cortes v. Nat'l Credit Adjusters, L.L.C.*,
    No. 216CV00823MCEEFB,
    2020 WL 3642373 (E.D. Cal. July 6, 2020)……………………………10, 12, 15

*Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC*,
    No. 8:17CV310, 2020 WL 639613 (D. Neb. Feb. 11, 2020)……..…………….21

*Drossin v. Nat'l Action Fin. Servs., Inc.*,
    255 F.R.D. 608 (S.D. Fla. 2009)…………………….………………………..9

*Drazen v. Pinto*,
    74 F.4th 1336 (11th Cir. 2023)…………………….……………………….2

*Facebook, Inc. v. Duguid*,
    141 S. Ct. 1163 (2021)…………………………………………………………1

*Fuller v. Becker & Poliakoff, P.A.*,
    197 F.R.D. 697 (M.D. Fla. 2000)………………..………………..8, 10, 12, 13

*Gehrich v. Chase Bank USA, N.A.*,
    No. 12 C 5510, 2016 WL 806549 (N.D. Ill. Mar. 2, 2016)…………..……..11, 15

*Green v. Serv. Master On Location Servs. Corp.*,
    No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009)…………………..21

*Head v. Citibank, N.A.*,
    340 F.R.D. 145 (D. Ariz. 2022)……………………………………………*passim*

*Herman v. Seaworld Parks & Ent., Inc.*,
    320 F.R.D. 271 (M.D. Fla. 2017)………………………………………………15

*In re HealthSouth Corp. Sec. Litig.*,
    334 F. App'x 248 (11th Cir. 2009)……………………………………………24

*Ira Holtzman, C.P.A., & Assocs. v. Turza*,
    728 F.3d 682 (7th Cir. 2013)……………………………………………..7

*James v. JPMorgan Chase Bank, N.A.*,
    No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016)….…15

iii

*Jamison v. First Credit Servs., Inc.*,
 290 F.R.D. 92 (N.D. Ill. 2013)……………………………………………….10

*Johnson v. Navient Sols., Inc.*,
 315 F.R.D. 501 (S.D. Ind. 2016)……………………………………….7, 19

*Knapper v. Cox Commc'ns, Inc.*,
 329 F.R.D. 238 (D. Ariz. 2019)……………………………………….*passim*

*Krakauer v. Dish Network, L.L.C.*,
 925 F.3d 643 (4th Cir. 2019)…………………………….………………7

*Lavigne v. First Cmty. Bankshares, Inc.*,
 No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018)….*passim*

*Malta v. Fed. Home Loan Mortg. Corp.*,
 No. 10-CV-1290 BEN NLS, 2013 WL 444619 (S.D. Cal. Feb. 5, 2013)……..15

*Manno v. Healthcare Revenue Recovery Grp., LLC*,
 289 F.R.D. 674 (S.D. Fla. 2013)…………………..……………………….17, 22

*McMillion v. Rash Curtis & Assocs.*,
 No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017)…….8, 13

*Mohamed v. Am. Motor Co., LLC*,
 320 F.R.D. 301 (S.D. Fla. 2017)………………………………………….15

*Morgan v. Adventist Health Sys./Sunbelt, Inc.*,
 No. 618CV1342ORL78DCI, 2020 WL 1674307 (M.D. Fla. Jan. 15, 2020).....18

*Morgan v. Orlando Health, Inc.*,
 No. 6:17-CV-1972-CEM-GJK,
 2021 WL 12100347 (M.D. Fla. Dec. 8, 2021)………………………………..18

*Morgan v. Pub. Storage*,
 301 F. Supp. 3d 1237 (S.D. Fla. 2016)………………………………………….24

*Mullins v. Direct Digital, LLC*,
 795 F.3d 654 (7th Cir. 2015)…………………………………………….21, 23

*Munday v. Navy Fed. Credit Union*,
 2016 WL 7655807 (C.D. Cal. 2016)…………………………………………13

iv

*Murphy v. DCI Biologicals Orlando, LLC*,
    No. 6:12-CV-1459-ORL, 2013 WL 6865772 (M.D. Fla. Dec. 31, 2013)……....1

*N. L. by Lemos v. Credit One Bank, N.A.*,
    960 F.3d 1164 (9th Cir. 2020)…………………………………………………1, 16

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014)…………………………...………………..16

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*,
    311 F.R.D. 688 (S.D. Fla. 2015)………………………………12, 15, 17, 20

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
    281 F.R.D. 327 (E.D. Wis. 2012)………………………….………………20

*Reyes v. BCA Fin. Servs., Inc.*,
    No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018)…..7

*Rhodes v. Nat'l Collection Sys., Inc.*,
    No. 15-CV-02049-REB-STV, 2017 WL 4334079 (D. Colo. Apr. 28, 2017)…..25

*Samson v. United Healthcare Servs. Inc.*,
    No. 2:19-CV-00175,
    2023 WL 6793973 (W.D. Wash. Oct. 13, 2023)……………………7, 11, 18, 22

*Shamblin v. Obama for Am.*,
    No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765 (M.D. Fla. Apr. 27, 2015)...18

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*,
    279 F.R.D. 442 (N.D. Ohio 2012)……………………………………………21

*Sliwa v. Bright House Networks, LLC*,
    333 F.R.D. 255 (M.D. Fla. 2019)……………………………………………18, 23

*Soppet v. Enhanced Recovery Co.*, LLC,
    679 F.3d 637 (7th Cir. 2012)……………………………………………….16

*Sos v. State Farm Mut. Auto. Ins. Co.*,
    No. 21-11769, 2023 WL 5608014 (11th Cir. Aug. 30, 2023)…………...8, 10, 12

v

*Tillman v. Ally Fin. Inc.*,
No. 2:16-CV-313-FTM-99CM,
2017 WL 7194275 (M.D. Fla. Sept. 29, 2017)………..……………………..18

*Valley Drug Co. v. Geneva Pharms., Inc.*,
350 F.3d 1181 (11th Cir. 2003)………………………………………………14

*Wesley v. Snap Fin. LLC*,
339 F.R.D. 277 (D. Utah 2021)……………………..……………………*passim*

*West v. Cal. Servs. Bureau, Inc.*,
323 F.R.D. 295 (N.D. Cal. 2017)………………………………………..7, 22

*Williams v. PillPack LLC*,
343 F.R.D. 201 (W.D. Wash. 2022)…………………………………………..22

*Wilson v. Badcock Home Furniture*,
329 F.R.D. 454 (M.D. Fla. 2018)…………………………………………….18

## Regulatory Authorities

*In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*,
32 F.C.C. Rcd. 6007 (2017)………………………………………………….9

*In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*,
33 F.C.C. Rcd. 12024 (2018)…………………………..……………………9

## Rules

Fed. R. Civ. P. 23(a)……………………………………………………..6

Fed. R. Civ. P. 23(a)(1)……………………..……………………………8

Fed. R. Civ. P. 23(a)(2)………………………………………………10

Fed. R. Civ. P. 23(b)(3)……………………………………………..7, 14

## Statutes

47 U.S.C. § 227(b)(1)(A)……………………………………………………1

**Request for Relief**

Elaine Johnson respectfully requests that this Court certify the following class:

All persons and entities throughout the United States (1) to whom United HealthCare Services, Inc. placed a call regarding the Optum® HouseCalls program relating to a UnitedHealthcare plan, (2) directed to a cellular telephone number customarily used by a person who is not and was not a UnitedHealthcare member or plan holder, (3) in connection with which United HealthCare Services, Inc. used an artificial or prerecorded voice, (4) from October 12, 2019 through the date of class certification.

ECF No. 41 at 7, ¶ 48.

Ms. Johnson also requests that this Court appoint her as a representative for the class, appoint Greenwald Davidson Radbil PLLC ("GDR") as counsel for the class, and direct the parties to propose notice to the class.

**The Telephone Consumer Protection Act ("TCPA")**

The TCPA prohibits, absent prior express consent, calls made to cellular telephones using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A).[1]

"'Prior express consent' is an affirmative defense to a claim under the TCPA." *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) (Honeywell, J.), *aff'd*, 797 F.3d 1302 (11th Cir. 2015). It is not an element of a TCPA plaintiff's claim. *Id*. at *5.

"[I]ntent to call a customer who had consented to its calls does not exempt [a defendant] from liability under the TCPA when it calls someone else who did not consent." *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020).

---

[1]    *See also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) ("The statute separately prohibits calls using '[a] prerecorded voice'. . . . Our decision today does not affect that prohibition.").

1

And a TCPA plaintiff's "receipt of a single unsolicited call to a cell phone and a voicemail recording constitute[] an injury in fact." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).[2]

## Statement of Relevant Facts



---

[2]    *Accord Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023) (consumers who receive an unwanted, illegal telemarketing text message suffer a concrete injury in fact, as required to have standing).

███████████████████████████████████████████████████████

██████████████████████████████████

Significantly, as of August 2021, telephone number (352) 406-9142 did not belong to ███████████. Rather, as of August 2021, and through February 2023, telephone number (352) 406-9142 belonged to Elaine Johnson. *See* Answers to Defendant's Interrogatories, attached as Ex. D, at No. 2; Transcript of July 3, 2024 Deposition of Plaintiff ("Johnson Transcript"), attached as Ex. E, at 21:10-22; 22:1-9; 34:11-22; 35:1-22; 36:1-6; *accord* Declaration of Carla Peak, attached as Ex. F, ¶ 21. And from August 2021 through February 2023, Ms. Johnson alone used telephone number (352) 406-9142 as her personal cellular telephone number. *See* Johnson Transcript at 30:3-22; 31:1-3; 65:19-22; 66:1-20.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████; *see also* Answers to Defendant's Interrogatories at No. 3; Johnson Transcript at 21:10-16; 38:22; 39:1-5; 40:9-14; 42:19-22; 43:1-2. One of these prerecorded voice messages states, for example:

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████

3

██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████ ;

Answers to Plaintiff's Requests for Admission, attached as Ex. I, at No. 12.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████ ; *see also* Answers to Defendant's

Interrogatories at No. 4; Johnson Transcript at 37:5-10; 51:14-16; 52:13-22; 53:1-22;

54:1-16. ████████████████████████████████████████

████████████████████████████████████████████

To be clear, at no point did Ms. Johnson have a relationship with United. ████

████████████████████████████████████████████████████

█████████ ; Answers to Plaintiff's Requests for Admission at Nos. 14-15; *accord*

████████████████████████████████████████████████████ ; Responses to

Plaintiff's Requests for Production, attached as Ex. L, at No. 40. And she did not give

United consent to deliver prerecorded voice messages to telephone number (352) 406-

9142. *See* Answers to Plaintiff's Requests for Admission at Nos. 16-18.

At bottom, from October 2021 through April 2022, United delivered

HouseCalls-related prerecorded voice messages intended for ████████████ to Ms.

Johnson's telephone number—(352) 406-9142—without Ms. Johnson's consent. And

United delivered these messages to Ms. Johnson's telephone number intending to

reach ████████████ despite that ████████████—according to United—provided

4

United the (352) 406-9142 telephone number nearly a decade earlier, and despite that ████████████ since provided United a new telephone number at which to reach her. Ms. Johnson, of note, is not alone. ██████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████; *see also* Declaration of John Simbach, attached as Ex. N, ████.

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████



## Standard

Under Federal Rule of Civil Procedure 23, the party seeking class certification must first demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative plaintiff are typical of the claims or defenses of the class; and (4) the representative plaintiff will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). The party seeking certification must then show—as applicable to this matter—that questions of law or fact common to the members of

---

[3] United produced fifty "recordings of [live] voice calls regarding the HouseCalls program where United received an indication that the calls were placed to a 'wrong' or 'reassigned' number[.]" *See* Sept. 12, 2024 and Oct. 1, 2024 Emails from Counsel for United, attached as Ex. X. Dozens of these recordings are transcribed at Exhibit W.

the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3).

## Argument

### I. TCPA claims are well suited for class treatment.

"Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").

And this remains true for "wrong number" TCPA class actions like this one, including a similar "wrong number" TCPA class action against United. *See Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying a "wrong number" TCPA class over objection); *see also, e.g.*, *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols.,*

7

*Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" TCPA classes over objection).[4]

## II.    Ms. Johnson satisfies the requirements of Rule 23(a).

### A. The class is so numerous that joinder of all members is impracticable.

Rule 23(a) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although the number of class members needed to satisfy this rule is no[t] fixed[,] . . . generally . . . more than forty [is] adequate." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *16 (11th Cir. Aug. 30, 2023). But "[i]t is not necessary that the precise number of class members be known." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000) (Kovachevich, J.). Rather, plaintiffs may "make reasonable estimates with support as to the size of the proposed class." *Id.* And "[t]he Court is given discretion to make assumptions when determining the numerosity of a class." *Id.*

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████ *See supra,* Statement of

---

[4]    GDR was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, *Reyes*, and *Johnson*. Additionally, the defendants' petitions to appeal pursuant to Rule 23(f) in *Head*, *Wesley*, and *Johnson* were denied by the Ninth, Tenth, and Seventh Circuits, respectively.

Relevant Facts. This, of course, is not surprising given that "according to one source 100,000 numbers are reassigned by wireless carriers every day," *In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 32 F.C.C. Rcd. 6007, *6009 (2017), and "[a]pproximately 35 million numbers are disconnected and made available for reassignment to new consumers each year." *In the Matter of Advanced Methods to Target & Eliminate Unlawful Robocalls*, 33 F.C.C. Rcd. 12024, *12027 (2018). Indeed, "no commenter disputes that unwanted calls to reassigned numbers are a significant problem for callers and consumers." *Id*. And United's proposed expert agrees United will "place calls to persons who are not its members." *See* Transcript of September 26, 2024 Deposition of David Kalat ("Kalat Transcript"), attached as Ex. Y, at 19:6-13.

Joinder of all members of the class—which may exceed 200,000—is therefore impracticable. *See Lavigne*, 2018 WL 2694457, at *3-4 (finding a proposed "wrong number" TCPA class satisfied numerosity where "Defendants' own call logs . . . identify 38,125 separate phone numbers (both landline and cell phone) that . . . were coded as 'Bad/Wrong Number,'" and explaining that "[e]ven if only a fraction of the approximately 38,125 are in fact class members, the numerosity requirement here is readily satisfied.").[5]

---

[5]     *See also Wesley*, 339 F.R.D. at 290 ("Using Snap's call logs from September 1, 2019 through August 2020, Wesley attempts initially to estimate the number of class members by pointing to 32,780 cellphone numbers marked in Snap's call logs as 'wrong numbers,' to which Snap delivered a prerecorded message. The court agrees with Wesley that these call logs establish a sufficiently large number of class members who fit the court's modified proposed class definition."); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 614-15 (S.D. Fla. 2009) (finding a proposed class to be sufficiently numerous where the number of class members was an unknown subset of 30,139 individuals, and noting that it was reasonable to assume that fifty of the "tens of thousands" of people the defendant called were class members).

**B. Questions of law and fact are common to all members of the class.**

Rule 23(a)(2) requires the existence of common questions of law or fact. *See* Fed. R. Civ. P. 23(a)(2). The burden "to satisfy this requirement [i]s a low hurdle." *Sos*, 2023 WL 5608014, at *16. And "[n]ot all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members." *Fuller*, 197 F.R.D. at 700. That is, "[a] sufficient nexus is established if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

Here, whether United used a prerecorded voice in connection with the calls at issue is a question common to the proposed class. *See Knapper*, 329 F.R.D. at 242 ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke.").[6] Additionally, that each member of the proposed class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another

---

[6]   *See also Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *4 (E.D. Cal. July 6, 2020) ("Here, the case presents the common legal issue of whether Defendant used . . . [a] prerecorded voice message to make unsolicited calls regarding a purported debt. This issue is common to all putative class members and thus, the commonality requirement is met."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) ("Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a 'prerecorded voice' prohibited by the TCPA[.]"); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Those who are members of one of the proposed classes by definition received the same calls . . . made by . . . using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question."); *Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using a[] . . . prerecorded or artificial voice"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding as questions "common to the class . . . (2) whether [the defendant's] dialer delivers pre-recorded messages").

common question. *See id.* ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied.").[7] What's more, whether liability attaches to wrong number calls is a question common to the proposed class. *See id.* (finding that "whether liability attaches for wrong or reassigned numbers" would "produce an answer that is central to the validity of each claim in one stroke").

Questions of law and fact are therefore common to all members of the class. *See Wesley*, 339 F.R.D. at 291-92 (finding "(1) whether Snap used a prerecorded voice in connection with the calls at issue; (2) whether the class members are entitled to the statutorily mandated relief; and (3) whether liability attaches to Snap's wrong number calls" as "common questions [that] will also provide common answers to legal and factual questions for all class members.").[8]

---

[7]     *See also Lavigne*, 2018 WL 2694457, at *4 ("Plaintiff identifies a number of common questions of law or fact: . . . . • whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls . . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question[.]").

[8]     *See also Samson*, 2023 WL 6793973, at *5 ("Samson argues the common questions are (1) whether United used a prerecorded voice to make calls to class members; and (2) whether United is liable for calls made to wrong or reassigned numbers, and for calls to individuals who previously told United not to call. (Mot. at 11-12.) These questions are applicable to the classes Samson seeks to certify. The Court finds commonality is satisfied."); *Head*, 340 F.R.D. at 150–51 ("Head argues there exist three common questions: "First, whether Citibank utilized a prerecorded voice in connection with its calls to class members . . . Second, that each class member suffered the same injury and is entitled to the same statutorily mandated relief . . . Finally, . . . whether callers are liable for calls placed to wrong or reassigned numbers." * * * All of these questions are applicable to the class Head seeks to certify. Commonality is therefore satisfied.").

**C. Ms. Johnson's claims are typical of the claims of the members of the class.**

"Class certification also requires that the claims of the named plaintiff be typical of the claims of the class." *Fuller*, 197 F.R.D. at 700. "Typicality is satisfied where the named plaintiff possess[es] the same interest and suffer[ed] the same injury as the [unnamed] class members." *Sos*, 2023 WL 5608014, at *17. "This alignment of interests and injuries exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* "Typicality, however, does not require identical claims or defenses." *Id.* "And [d]ifferences in the amount of damages will not defeat typicality, nor will [a] factual variation[,] . . . unless the factual position of the representative markedly differs from that of other members of the class." *Id.*

Here, Ms. Johnson and members the class were similarly harmed by United's common practice of delivering prerecorded voice messages to non-United members or plan holders. Ms. Johnson, therefore, possesses the same interests, and seeks the same relief, as do members of her proposed class. *See generally* ECF No. 41. Correspondingly, Ms. Johnson's claims are typical of the claims of members of the class. *See Cortes*, 2020 WL 3642373, at *5 ("Here, Plaintiff asserts the same claims that could be brought by any of the other class members, specifically that Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls regarding a purported debt. Therefore, the typicality requirement is satisfied.").[9]

---

[9]     *Accord Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("[T]he proposed class representative satisfies the typicality requirements because Plaintiff, like each of the

12

As well, that the subject calls United placed to Ms. Johnson and class members were wrong-number calls makes Johnson's claims typical. *See Knapper*, 329 F.R.D. at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members.").[10]

**D. Ms. Johnson and GDR will protect the interests of the members of the class.**

"Federal Rule of Civil Procedure 23(a)(4) requires that the named plaintiffs provide fair and adequate protection for the interests of the class." *Fuller*, 197 F.R.D. at 700. "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and

---

class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *Cabrera*, 2014 WL 11894430, at *4 ("The Court finds that Plaintiff's claims are typical of the proposed cellular-only class because his claims arise from the same practice—[the defendant's] use of LiveVox to place calls to cellular numbers—and are premised on the same TCPA violation."); *C-Mart, Inc. v. Metro. Life Ins. Co.*, 299 F.R.D. 679, 690 (S.D. Fla. 2014) (finding typicality in a TCPA matter where the named plaintiff received the same communication as did members of the class).

[10]     *See also Lavigne*, 2018 WL 2694457, at *5 ("Moreover, both the Plaintiff and putative class members are in the same factual situation. The proposed class is narrowly tailored to include individuals who called in to GC services to report that Defendants were calling the wrong person and coded as "Bad/Wrong Number"[.] . . . The proposed class is therefore most likely factually identical to Plaintiff."); *McMillion*, 2017 WL 3895764, at *7 ("Additionally, with respect to Perez, . . . he, like the members of the Non-Debtor classes, never had a debt collection account with Rash Curtis. Accordingly, the Court finds that Perez has satisfied Rule 23(a)(3)'s typicality requirement."); *Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *4 (C.D. Cal. 2016) (finding typicality satisfied where "[Plaintiff]—like members of the putative class—was called on his cellular telephone by Navy Federal, with an [automatic telephone dialing system], between October 9, 2011 through the present and the call was coded as a 'wrong number'.").

13

the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, in response to questions from United's counsel, Ms. Johnson explained her claims against United, *see* Johnson Transcript at 12:12-22; 13:1-16; 61:7-15, and her responsibilities as a class representative. *See id.* at 62:15-22; 63:1-17; 64-11-18. She also testified that she does she expect "any incentive whether financial or otherwise to serve as a class representative." *Id.* at 64:19-22; 65:1-7.

As well, Ms. Johnson retained GDR, a firm competent in class action litigation, including under the TCPA. *See* Declaration of Aaron Radbil ("Radbil Declaration"), attached as Ex. V, ¶¶ 9-11. Indeed, courts have not only appointed GDR as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight GDR's wealth of experience and skill. *See id.*, ¶¶ 12-22. And GDR has, and will continue to vigorously protect the interests of members of the proposed class. *Id.*, ¶¶ 42-45. Considering this, Ms. Johnson and GDR will fairly and adequately protect the interests of the members of the class.

### III.   Ms. Johnson satisfies the requirements of Rule 23(b).

#### A. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members.

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "The requirement that common questions of law or fact predominate means the issues in the class action that are subject to generalized proof . . . must predominate

14

over those issues that are subject only to individualized proof." *Herman v. Seaworld Parks & Ent., Inc.*, 320 F.R.D. 271, 295 (M.D. Fla. 2017) (Scriven, J.). "[I]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Id.*

Relevant, then, is that "[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff must allege that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (Honeywell, J.). A TCPA defendant, of course, "bears the burden of establishing prior consent." *Id.*

Given as much, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes*, 2020 WL 3642373, at *5.[11]

---

[11]      *See also Gehrich*, 316 F.R.D. at 226 (noting that "[t]he common questions listed above [including whether the defendant placed prerecorded or automated calls and alerts to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues"); *accord Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 316 (S.D. Fla. 2017) ("whether [a defendant] used an automated telephonic dialing system to [place the subject calls] and caused injuries to the class members is an issue that predominates over those that may be considered individualized"); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2016 WL 6908118, at *1 (M.D. Fla. Nov. 22, 2016) ("Also, the class satisfies Rule 23(b)(3)'s predominance requirement. Class-wide proof can answer the predominant questions (whether Chase auto-dialed each person and whether each call violates the TCPA).") (Merryday, J.); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 (explaining that "[t]he facts necessary to establish liability [under the TCPA] relate to Defendant's common course of conduct and the transmissions of the [communications]," and finding that "common issues predominate over any individual issues that may arise"); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-

Also significant, individualized issues of prior express consent that may exist in some TCPA class actions do not exist here. In short, members of the class are unintended recipients of United's prerecorded voice messages, who necessarily did not provide United consent to place calls to their telephone numbers. Defendant's proposed expert, in fact, acknowledged as much in explaining that people who "were not a [United] member," *see* Kalat Transcript at 57:18-24; 58:1-5—which, again, is a necessary element of class membership here, *see* ECF No. 41 at 7, ¶ 48 (requiring that "a person . . . is not and was not a UnitedHealthcare member")—"did not provide consent." *See* Kalat Transcript at 57:18-24; 58:1-5. Along the same line, Defendant's proposed expert also conceded he did not identify a single member of the class "who provided consent to United to receive calls with a prerecorded voice." *See* Kalat Transcript at 45:15-21. So because the claims at bar stem from calls to non-United members or plan holders, issues relating to prior express consent do not bear on this matter. *See Head*, 340 F.R.D. at 153 (agreeing "that issues of consent do not defeat the class because class members, by definition, are non-customers of Citibank who did not consent to being robocalled").[12]

---

CV-1290 BEN NLS, 2013 WL 444619, at *4 (S.D. Cal. Feb. 5, 2013) ("The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members.").

[12]    *Accord N. L. by Lemos*, 960 F.3d at 1166 ("Credit One's intent to call a customer who had consented to its calls does not exempt Credit One from liability under the TCPA when it calls someone else who did not consent."); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251-52 (11th Cir. 2014) ("one can consent to a call only if one has the authority to do so, and only the subscriber . . . can give such consent . . . ."); *Soppet v. Enhanced Recovery Co.*, LLC, 679 F.3d 637, 641 (7th Cir. 2012) ("Customer could consent expressly to receive calls at his *current* Cell Number, even if that number changes, but simply providing Creditor with a number . . . does not authorize perpetual calls to that number after it has been reassigned to someone else.").

And even if issues regarding prior express consent existed here—they do not—common issues would still predominate. *See Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("The Court agrees . . . that any issues relating to whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action.").[13]

Moreover, in a wrong-number TCPA class action, issues related to "wrong number" notations—United, for example, will likely suggest that not every telephone number it marked as a "wrong number" belongs to a non-United member or plan holder—do not defeat predominance even were they to exist:

> Defendants also argue that this litigation will devolve into individualized issues . . . . They assert that a call could be coded "Bad/Wrong Number" for many reasons unrelated to the fact that a third party was called. Initially, a number of courts have rejected this theory in "Wrong Number" cases, under similar factual circumstances, at the class certification stage. *See Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Munday*, 2016 WL 7655807, at *4; *Abdeljalil*, 306 F.R.D. at 309 (rejecting argument that class is not ascertainable because notation in account for "bad number" does not necessarily mean that number belonged to non-account holder); *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *4 (N.D. Cal. 2017) ("Defendant does not persuade. As an initial matter, several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial

---

[13]    *See also Head*, 340 F.R.D. at 153 ("The Court explained issues of consent, or lack of consent, could be overcome on a class-wide basis through the use of a reverse lookup service in conjunction with: (1) subpoenaing wireless carriers to obtain additional name and address information for the cellular telephone numbers at issue; (2) checking the addresses against the National Change of Address database; (3) publicizing notice; (4) issuing a press release; (5) setting up a notice website; and (6) requiring claims forms, self-identifying affidavits, and supporting documentation."); *Abdeljalil v. Gen. Elec. Capital Corp.*, 306 F.R.D. 303, 311 (S.D. Cal. 2015) (rejecting the defendant's argument that prior express consent defeated predominance in connection with a TCPA "wrong-number" class, and finding that "plaintiff has met his burden of demonstrating that questions of fact and law predominate over individualized issues"); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("Common questions of law and fact predominate here because, as explained above, any persons who may have been subject to an individualized consent defense were excluded during numerosity discovery.").

17

proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number.'").

*Lavigne*, 2018 WL 2694457, at *8.[14]

And this is especially true where a class—as here—is not defined by reference to the defendant's internal "wrong number" designations. *See Wesley*, 339 F.R.D. at 298 (noting if a class were defined "by reference to the 'Wrong Number' notations . . . the inaccuracy of the [the notations] would raise an individualized issue of consent with the class members," but where a class is not defined "by reference to 'wrong number' calls" any inaccuracy in "wrong number" notations does not raise individualized issues that will predominate).[15]

---

[14] *See also Samson*, 2023 WL 6793973, at *10 (rejecting the defendant's contention that because "'wrong number' dispositions have multiple meanings" individualized issues would predominate); *Head*, 340 F.R.D. at 153 ("[T]he Court will join the other courts that have certified TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in Defendant's call records may not have actually been a wrong number.") (collecting cases); *Wesley*, 339 F.R.D. at 298 ("Snap contends that the 'wrong number' indication in its call logs does not establish the prerecorded voice message was left without consent. Because of this, Snap argues, the issue of consent will require individualized proof that will predominate over the common issues in this case. The court disagrees."); *Knapper*, 329 F.R.D. at 244 ("Indeed, courts have certified TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in Defendant's call records may not have actually been a wrong number.") (collecting cases).

[15] Significant, then, is that decisions denying certification of wrong number TCPA classes defined by reference to a defendant's records—*see, e.g.*, *Morgan v. Orlando Health, Inc.*, No. 6:17-CV-1972-CEM-GJK, 2021 WL 12100347, at *1 (M.D. Fla. Dec. 8, 2021) (Mendoza, J.) (defining the class by telephone numbers for which "Defendant's call records report a wrong number associated with said cellular telephone number"); *Morgan v. Adventist Health Sys./Sunbelt, Inc.*, No. 618CV1342ORL78DCI, 2020 WL 1674307, at *1 (M.D. Fla. Jan. 15, 2020) (Berger, J.) (defining the class by telephone numbers for which "Defendant's records note said telephone number was a wrong number"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 272 (M.D. Fla. 2019) (Berger, J.) (defining the class by telephone numbers "Defendants had already documented the number as a wrong number in their records"); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 456 (M.D. Fla. 2018) (defining the class by telephone numbers for which "Defendant's call records report a wrong number associated with said cellular telephone number") (Jung, J.); *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2017 WL 7194275, at *2 (M.D. Fla. Sept. 29, 2017) (defining the class by telephone numbers for which the defendant "noted the number as a Wrong Number or Do Not Call in its records") (Steele, J.); *accord Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, at *4 (M.D. Fla. Apr. 27, 2015) (Covington, J.) (defining the class by persons for "whom

18

Additionally, other potential issues—such as "difficult damage calculations, individual determinations of who the telephone user was, when the call was made and proof that [the defendant] actually made the calls . . . difficult[y] [in] determining the identity of users . . . [and] the distinct possibility that every record marked as a wrong number may not have actually been a wrong number"—do not stand in the way of a finding of predominance. *See Johnson*, 315 F.R.D. at 502 (certifying a "wrong-number" TCPA class, and rejecting the defendant's contention that individual issues would "overwhelm the litigation and destroy the required commonality of facts").

### B. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

"Superiority . . . asks whether a class action is superior to other available methods for the fair and efficient adjudication of [claims]." *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 319 (M.D. Fla. 2018) (Dalton, Jr., J.). "The inquiry focuses not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Id*. Against this backdrop, "Rule 23(b)(3) has

---

Defendants' records do not show prior express consent for those calls")—are irrelevant to this matter because the class here is not defined by reference to United's records. *See* ECF No. 41 at 7, ¶ 48. That is, where the defendants in *Morgan*, *Morgan*, *Wilson*, *Sliwa*, and *Tillman* were able to defeat class certification because they offered evidence that wrong-number designations sometimes did not mean they called a wrong number—thus, proposed class members, who were defined by wrong-number designations, might not have been recipients of wrong-number calls, and could have provided prior express consent to be called—a similar offer of evidence here cannot defeat class certification because the class is not defined by reference to United's records or wrong-number designations. Stated otherwise, some people whose telephone numbers United marked with wrong number notations may have consented to calls from United. But people who are not United members or plan holders—a key element of the class definition here—did not so consent, as even United's proposed expert concedes.

four non-exhaustive factors to consider for superiority: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action." *Id.*

From the outset, litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Ord., Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013) ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations.").[16] This is, in part, because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because class members' claims are identical, they arise from the same standardized conduct, and they result in uniform damages:

> The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.[17]

---

[16]    *See also Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims.").

[17]    *See also Lavigne*, 2018 WL 2694457, at *8 ("[T]he complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on

Also important, absent a class action thousands of claims like Ms. Johnson's—all of which stem from United's identical conduct—will go unredressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute.").[18] Indeed, the court in *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC* explained:

> As Judge Posner once stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The same principle applies in this case. The amount of damages allegedly is over $100,000 million dollars. The damages for these two plaintiffs are approximately $200.00. A class action seems to be the superior method of challenging the actions of the defendant. There is no other way for the plaintiffs to address CPAY's alleged behaviors.

No. 8:17CV310, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020).

Additionally, there are unlikely to be serious difficulties in the management of this case as a class action.[19] █████████████████████

---

approximately 30,000 separate cases.").

[18]   *See also Green v. Serv. Master On Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *Abdeljalil*, 306 F.R.D. at 312 ("This Court finds this case, in which 'damages suffered by each putative class member are not large,' is appropriate for class certification.").

[19]   Even if manageability concerns did exist, failure to certify a class action under Rule 23(b)(3) solely on manageability grounds is disfavored. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663-64 (7th Cir. 2015) ("[B]efore refusing to certify a class that meets the requirements of Rule 23(a), the district court should consider the alternatives as Rule 23(b)(3) instructs rather than denying certification because it may be challenging to identify particular class members. . . . Under this comparative framework, refusing to certify on manageability grounds alone should be the last

███████████████████████████████████████████

████████████████████████████████████████ *See supra*

Statement of Facts. And based on this information, the names and addresses of individuals associated with the cellular telephone numbers to which United delivered prerecorded voice messages and marked with a "wrong number" notation can be identified in a practical and efficient manner. *See* Declaration of Carla Peak, ¶¶ 16-21; *accord Brown v. DirecTV, LLC*, 330 F.R.D. 260, 273-74 (C.D. Cal. 2019) (certifying a TCPA class action and discussing the use of the defendant's internal wrong number notations to identify potential class members).[20]

A class action, therefore, is the superior method to adjudicate this matter. *See Manno*, 289 F.R.D. at 690 ("[T]he Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' [TCPA] claims.").

## IV.    The class is ascertainable.

"[A] proposed class is ascertainable if it is adequately defined such that its

---

resort."), *cert. denied*, 136 S. Ct. 1161 (2016).

[20]    *See also Wesley*, 339 F.R.D. at 300 (discussing the viability of reverse lookups to identify potential class members); *Knapper*, 329 F.R.D. at 244-46 (same); *West*, 323 F.R.D. at 302 (same); *LaVigne*, 330 F.R.D. at 296 (same); *Birchmeier*, 302 F.R.D. at 254 (rejecting an argument that the class was not manageable because it would allegedly be either impossible, or costly and onerous, to obtain the identities of the subscribers for the phone numbers of 930,000 class members); *accord Samson*, 2023 WL 6793973, at *10 ("[c]ourts have repeatedly recognized the adequacy of reverse lookup methodologies to satisfy Rule 23(b)(3)'s predominance requirement"); *Williams v. PillPack LLC*, 343 F.R.D. 201, 211 (W.D. Wash. 2022) (same).

membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). "[A]dministrative feasibility is not a requirement for certification under Rule 23." *Id.*[21] The focus of ascertainability is therefore on "the adequacy of the class definition itself," not "on whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Mullins*, 795 F.3d at 659. And a class is ascertainable where its definition is (1) not amorphous or imprecise, but clearly defined, (2) not limited by subjective criteria, and (3) not a fail-safe class, or one defined in terms of success on the merits. *See id.* at 659-60.

Here, the proposed class definition is not vague. Instead, it identifies a particular group of individuals (non-UnitedHealthcare members or plan holders) harmed in a particular way (they received prerecorded voice messages from United on their cellular telephones) during a specific period of time (October 12, 2019 through the date of class certification). The proposed class definition is not limited by subjective criteria. For example, it is not defined as "persons frustrated by United's prerecorded voice messages." And the proposed class is not defined by way of language that would create a fail-safe class, such as "all persons who have a valid TCPA claim against United." So if United prevails on the merits, *res judicata* will bar members of the proposed class from re-litigating their claims. Consequently, the class is ascertainable.

---

[21]     Worth mentioning, then, because administrative feasibility is not a requirement for certification under Rule 23, decisions denying class certification in wrong-number TCPA cases based on a lack of administrative feasibility—*see, e.g.*, *Sliwa*, 333 F.R.D. at 272 ("Plaintiff has not proposed an administratively feasible method for identifying the classes, and Plaintiff has thus failed to carry his burden of establishing ascertainability.")—are no longer good law.

23

**V.    Ms. Johnson's proposed notice plan satisfies Rule 23(c)(2)(B).**

"Rule 23 requires the court to direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 254 (11th Cir. 2009). "However, the 'best practicable' notice standard does not require that every class member actually receive notice." *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016).

Here, Ms. Johnson will send court-approved notice to potential class members by direct mail. *See* Declaration of Carla Peak, ¶¶ 15-32. In addition, she will create a dedicated website. *See id*. Ms. Johnson may also issue notice by internet and traditional publication, ensuring that as many potential class members as possible receive notice of this class action and are apprised of their rights. *See id*.

Individuals receiving notice then would have to determine whether they are *bona fide* class members affected by this case so they can decide whether to stay in the case or exclude themselves from it. And should there be a judgment in favor of the class, class members who wish to recover will be able to attest to receiving prerecorded voice messages and, if necessary, submit documentation such as telephone records. That is, for example, class members will be able to identify themselves by way of a sworn statement made in connection with a claim form should the class prevail on the merits. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (explaining that the need for self-identification and related discovery from absent class members, if necessary, does not disturb a defendant's due process rights, and noting that "there is

24

no due process right to a *cost-effective* procedure for challenging every individual claim to class membership").[22]

In the end, this method of class notice and class member participation is industry standard in TCPA class actions like this one. *See Bonoan v. Adobe Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (analyzing a notice plan proposed by Ms. Johnson's expert, which is materially indistinguishable from the plan she proposes in connection with this matter, and finding: "The proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice.").

## Conclusion

"The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 613 (2020). And "[f]or nearly 30 years, the people's representatives in Congress have been fighting back." *Id*. But it is not only the people's representatives who are fighting back. The people—like Ms. Johnson here—are too. With this in mind, Ms. Johnson respectfully requests that this Court certify the class, appoint her as a representative for the class, and appoint GDR as counsel for the class.

---

[22]    *See also, e.g.*, *Rhodes v. Nat'l Collection Sys., Inc.*, No. 15-CV-02049-REB-STV, 2017 WL 4334079, at *2 n.4 (D. Colo. Apr. 28, 2017) (characterizing as "appropriate" the "submission of self-identifying affidavits, subject as needed to audits and verification procedures and challenges, to identify class members.").

25

Dated: October 18, 2024

*/s/ Aaron D. Radbil*
Aaron D. Radbil (lead counsel)
James L. Davidson
Jesse S. Johnson
GREENWALD DAVIDSON RADBIL
PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
aradbil@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

26