Exhibit "E"

Case 5:23-cv-00522-GAP-PRL    Document 44-5    Filed 10/18/24    Page 1 of 14 PageID 807

Page 1

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA


CASE NO:  5:23-cv-00522


ELAINE JOHNSON,


        Plaintiffs,


vs.


UNITED HEALTHCARE SERVICES, INC.,


        Defendants.


                                              Washington, DC

                                    Wednesday, June 26th, 2024

Deposition of:

                        ELAINE JOHNSON

called for oral examination by counsel for the

Petitioner, pursuant to notice, at the home of, 101 Fern

Drive, Leesburg, Florida, remotely before Ashtyn F.

Plunkett, a Notary Public in and for the State of

Florida, commencing at 10:02 a.m., with all respective

parties present remotely:


                VERITEXT LEGAL SOLUTIONS

                21 MID-ATLANTIC REGION

               1250 I Street NW - Suite 901

                22 Washington, D.C. 20005

Page 12

A.    Six other people besides myself.

Q.    So seven total?

A.    Yes.

Q.    Setting the family aside, have you ever been involved in a lawsuit before?

A.    No.

Q.    So you've never served as a plaintiff in a lawsuit?

A.    No.

Q.    You've never been a defendant in a lawsuit?

A.    No.

Q.    Do you understand what this lawsuit is about?

A.    Yes.

Q.    What is it about?

A.    It's about receiving verbal calls from United Healthcare and it was against the Telephone Consumer Protection Act.

Q.    And do you know who the defendant is in this case?

A.    Yes.

Q.    Who is that?

A.    United Healthcare Services Inc.

Page 13

Q.    Can you describe your understanding of the role that United -- and I'll refer to United Healthcare Services as just United, can you describe the role that you understand United to have played in connection with this lawsuit?

A.    I understand that they -- they called me a bunch of times using an automated voice message.

Q.    And what are the legal claims that you're bringing in this lawsuit?

A.    Can you clarify that for me?

Q.    You know, you're the plaintiff in this lawsuit, you filed a lawsuit against the defendant, what are the legal claims that you are asserting in this lawsuit against the defendant United?

A.    That they broke the Telephone Consumer Protection Act.

Q.    And just at a high level, and we can get into more detail later, how do you think that the calls that United made actually harmed you?

A.    They were just repetitive and they -- they [sic] weren't the person they were looking for.

Q.    So are there -- there are two things?  One is

Page 21

allegations in this amended complaint?

A. Yes.

Q. Besides your attorneys, did anybody else help you gather information as part of drafting and filing this amended complaint?

A. No, just my attorneys.

Q. Okay. So you didn't speak to anybody else to provide any information?

A. No.

Q. And in this amended complaint, you allege that United made several calls to your phone between January 2021 and May 2023; is that right?

A. Yes.

Q. And what is the phone number that you allege that they called?

A. (352)406-9142.

Q. When did you get that phone number?

A. I believe it was sometime in January of 2021.

Q. Is that the phone number that you still have?

A. No.

Q. What is your current phone number?

A. ███████████.

Page 22

Q.    Can you say that one more time?

A.    ████████████ .

Q.    Have you had any other phone numbers in between the time that you stopped using the phone number that ended in 9412 and your current phone number?

A.    No.

Q.    When did you stop using the phone number that ended in 9142 and moved to this new phone number?

A.    I believe it was February of 2023.

Q.    You can go to tab 4, which we will mark as Exhibit 4.

        (Exhibit 4 was marked for identification purposes)

        Can you see this document on the screen?

A.    Yes.

Q.    Do you recognize this document?

A.    Yes.

Q.    What is it?

A.    It's the interrogatories.

Q.    And did you review the answers to these interrogatories --

A.    Yes.

Page 34

claim you received calls from United on for purposes of this litigation; is that right?

A.    Yes.

Q.    Did you ever receive bills from your phone provider for the number ending in 9 -- 9142?

A.    Yes.

Q.    Well, were you the subscriber of the phone number ending in 9142?  In other words, did you sign up for the phone coverage for that old phone number?

A.    It was under my mother's name.

Q.    Okay.  So did the bills for that phone number, the one ending in 9142, go to your mother?

A.    Yes, but I paid for them with my card.

Q.    Did you ever receive the bills yourself?

A.    Yes.

Q.    I'm sorry.  If they were subscribed -- if your mother was the subscriber and the bills went to her, how did you receive the bills?

A.    They came to my address, they came to my account that I made, and I paid all them.  My e-mail, all that.

Q.    Okay.  So the -- the bills, the phone carrier

Page 35

bills for the number ending in 9142, were under your

mom's name, but they were sent to you and associated

with your e-mail address?

A.   Yes.

Q.   Okay.  Do you have copies of those bills that

were sent to you?

A.   I can check.

Q.   Okay.

MR. YATES:  Jesse, I think -- we can talk

about after the deposition, but we'll probably

follow up on that.

MR. JOHNSON:  Okay.

Q.   And how did you actually pay for those?  Did

you pay your mom?

A.   No.  I paid -- I swiped my credit card.  I put

in my credit card information and I paid.

Q.   So your payment was directly to the phone

company basically?

A.   Yes.

Q.   Did the subscription ever get transferred into

your name, for that number ending in 9142?

A.   No.

Page 36

Q.   Did your mom ever pay any of those phone bills for the number 9142 for you?

A.   Not that I can recall.

Q.   Did your aunt ever pay any of those phone bills for you?

A.   No.

Q.   Okay.  We can go back to tab 4, which is Exhibit 4.  I want to walk through the calls that you claim to have received from United, Ms. Johnson, so I want to look at interrogatory number 3 in a moment.  But do you recall, sitting here right now, how many calls you claim you received from United to the phone number --

A.   Yes.

Q.   Sorry, let me just repeat the -- the question for the record.  Do you recall -- do you recall how many calls you claim you received from United to the phone number ending in 9142?

A.   Yes.

Q.   How many calls?

A.   Nine.

Q.   Okay.  And is it your allegation that all of

Page 61

damage from the calls that you received?

A.    No.

          MR. JOHNSON:  Objection.

Q.    Did you suffer any financial harm or damage from the calls that you received?

A.    No.

Q.    Do you know how much money you are seeking in connection with this lawsuit?

A.    Yes.

Q.    How much is that?

A.    I believe it's $500 for each phone call.

Q.    Okay.  And do you -- we just spoke about this, but you understand that this is -- this case is a class-action?

A.    Yes.

Q.    Do you know what a class-action is?

A.    Yes.

Q.    Can you just describe it briefly for me?

A.    Yes, sir.  It's like -- it's a lawsuit where a bunch of people have pretty much gone through the same thing, if I'm not mistaken.

Q.    And is that information that you learned from

Page 62

the Top Class Actions website?

A.    No.   I believe I learned it from my lawyer, if I'm not mistaken.

Q.    Okay.  And I believe you testified earlier that you've never been involved in a class-action; is that correct?

A.    Correct.

Q.    Would you ever consider filing an individual lawsuit instead of a class-action?

A.    Not that I can recall.

Q.    Do you have any views on why you decided to file this case as a class-action as opposed to an individual action?

A.    No.

Q.    Are you familiar with the term in class-action litigation called a class representative?

A.    Yes.

Q.    And what is a class representative?

A.    It's pretty much, like, the plaintiff that, like, files the class-action.  And, like, pretty much just, like, goes through everything.  Such as I am.

Q.    Okay.  So are you the class representative or

Page 63

planning to be the class representative in this case?

A.    I believe so.

Q.    Do you know if there are any other potential class representatives in this case?

A.    Not to my knowledge.  I'm not sure.

Q.    And fair to assume that you've never served as a class representative before?

A.    No.

Q.    And what do you understand the kind of duties and responsibilities of a class-action representative to be?

A.    I know I have to talk to my lawyers, keep everyone informed, things of that nature.

Q.    When you say keep everyone informed, who is the everyone in that sentence?

A.    The other -- the other people involved in the class-action.

Q.    Do you know how the class-action is defined in this case, in other words what falls within the class?

A.    Yes.

Q.    And what is that?

A.    People who have received the verbal calls from

Page 64

the United -- on the mobile telephone.  I'm sorry.

Q.   Have you communicated or attempted to communicate with any other class members or potential class members as part of this litigation?

A.   No.

Q.   Do you have any friends or family members that you think will be class members --

A.   No.

Q.   -- or class representatives in this case?

A.   No, sir.

Q.   Do you understand that if you were to become a class representative and the class was allowed to go forward, that you would have a duty to protect the interests of the other class members?

A.   Yes, sir.

Q.   And is that something that you're prepared to do in this capacity as potential class representative?

A.   Yes, sir.

Q.   Have you been offered any incentive whether financial or otherwise to serve as a class representative or potential class representative?

A.   No, sir.

Page 65

Q.   Are you expecting any compensation in exchange for your time serving as a class representative or potential class representative?

A.   No, sir.

Q.   Are you expecting any other compensation that's not financial in connection with that role?

A.   No, sir.

Q.   Just give me two minutes to see if there's anything else.

MR. YATES:  Okay.  I think that's all I have for the moment.  I just reserve the rest of my time, but, Jesse, if you have any questions yourself, and then we can maybe clean up the exhibit issue after that?

MR. JOHNSON:  Sure.  I've got just a few questions.  Ashtyn, is it okay to go ahead and move forward?  Okay.

BY MR. JOHNSON:

Q.   So, Elaine, I want to clarify a couple points from earlier in the deposition.  So let's return to the phone number that you used ending in 9142.  So is the 9142 number the phone number on which you received the