# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Elaine Johnson, *on behalf of herself and others similarly situated*, | ) ) ) | Civil Action No.: 5:23-cv-00522 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| United HealthCare Services, Inc., | ) ) ) | |
| Defendant. | ) | |

# PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## Introduction

Elaine Johnson filed this class action against United HealthCare Services, Inc. ("United"), asserting, on behalf of herself and others similarly situated, that United violated the Telephone Consumer Protection Act ("TCPA") by using an artificial or prerecorded voice in connection with non-emergency calls it placed to cellular telephone numbers, absent prior express consent. Following over a year-and-a-half of contested litigation, and as a result of arm's-length negotiations, Ms. Johnson and United reached an agreement to resolve this matter.

## Summary of the Settlement

The parties' settlement resolves this matter on behalf of the following class:

> All persons and entities throughout the United States (1) to whom United HealthCare Services, Inc. placed a call regarding the Optum® HouseCalls program relating to a UnitedHealthcare plan, (2) directed to a cellular telephone number customarily used by a person who is not and was not a UnitedHealthcare member or plan holder, (3) in connection with which United HealthCare Services, Inc. used an artificial or prerecorded voice, (4) from October 12, 2019 through [the date of preliminary approval of the parties' class action settlement].

To compensate settlement class members, United will create, within 30 days after this Court preliminarily approves the settlement, a non-reversionary settlement fund in the amount of $3,495,000. Paid from the settlement fund will be compensation to settlement class members; the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; and, reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval.

A third-party claims administrator—Verita Global, LLC ("Verita")—will mail notice of the settlement directly to potential settlement class members, together with a detachable claim form that settlement class members can use to submit claims. Verita will also establish a dedicated settlement website that provides information about the settlement, and through which settlement class members can submit claims electronically.

Each settlement class member who submits an approved claim will be entitled to a *pro rata* share of the non-reversionary settlement fund after deducting the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; and, reasonable attorneys' fees.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Ms. Johnson and each non-excluded settlement class member will release and forever discharge certain claims they have against United under the TCPA and related state laws.

The parties' settlement agreement is attached as Exhibit A.

### The TCPA

The TCPA prohibits, absent prior express consent, calls made to cellular telephones using "an artificial or prerecorded voice[.]" 47 U.S.C. § 227(b)(1)(A).[1]

---

[1]      *See also Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021) ("The statute separately prohibits calls using '[a] prerecorded voice'. . . . Our decision today does not affect that prohibition.").

"'Prior express consent' is an affirmative defense to a claim under the TCPA," *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013 WL 6865772, at *4 (M.D. Fla. Dec. 31, 2013) (Honeywell, J.), *aff'd*, 797 F.3d 1302 (11th Cir. 2015), and is not an element of a TCPA plaintiff's claim. *Id.* at *5. "[I]ntent to call a customer who had consented to its calls does not exempt [a defendant] from liability under the TCPA when it calls someone else who did not consent." *N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020). And a TCPA plaintiff's "receipt of a single unsolicited call to a cell phone and a voicemail recording constitute[] an injury in fact." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).[2]

### Summary of Relevant Facts

United places calls regarding its HouseCalls program. In connection with these calls, and under certain circumstances, United delivers prerecorded voice messages through which it explains its members may be eligible for certain benefits associated with their coverage.

On July 31, 2012—according to United—a UnitedHealthcare member and plan holder ("Jane Doe") provided telephone number (352) 406-XXXX to United. Nine years later, Ms. Doe provided a different telephone number to United. But United did not, after receiving Ms. Doe's new telephone number, remove her old telephone

---

[2]     *Accord Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ( "[W]e hold that the receipt of an unwanted text message causes a concrete injury[.]").

3

number from its system. Nor did United, after receiving Ms. Doe's new telephone number, confirm her old telephone number still belonged to her.

Significantly, as of August 2021, telephone number (352) 406-XXXX did not belong to Ms. Doe. Rather, as of August 2021, and through February 2023, telephone number (352) 406-XXXX belonged to Ms. Johnson. And from August 2021 through February 2023, Ms. Johnson alone used telephone number (352) 406-XXXX as her personal cellular telephone number.

No matter, on October 5, 2021, October 28, 2021, November 8, 2021, and April 13, 2022, United delivered HouseCalls program-related prerecorded voice messages to telephone number (352) 406-XXXX. Each of these prerecorded voice messages was intended for Ms. Doe—not Ms. Johnson. Subsequently, on April 18, 2022, Ms. Johnson informed United it reached a wrong telephone number. United then marked telephone number (352) 406-XXXX as a "wrong number" in its system.

At no point did Ms. Johnson have a relationship with United. She did not provide telephone number (352) 406-XXXX to United. And she did not give United consent to deliver prerecorded voice messages to telephone number (352) 406-XXXX.

At bottom, from October 2021 through April 2022, United delivered HouseCalls-related prerecorded voice messages intended for Ms. Doe to Ms. Johnson's telephone number—(352) 406-XXXX—without Ms. Johnson's consent. And United delivered these messages to Ms. Johnson's telephone number intending to reach Ms. Doe despite that Ms. Doe—according to United—provided United the

(352) 406-XXXX telephone number nearly a decade earlier, and despite that Ms. Doe since provided United a new telephone number at which to reach her.

Ms. Johnson, of note, is not alone. From October 2019 through October 2023, United delivered HouseCalls program-related prerecorded voice messages to 218,628 cellular telephone numbers, each of which United marked as a "wrong number." Against this backdrop, and given information the parties learned through discovery, they estimate that approximately 29,500 cellular telephone numbers will fall within the settlement class definition.[3]

### Argument

**I.    The settlement class meets all requirements for certification under Rule 23.**

**A. TCPA claims are well suited for class treatment.**

"Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition.").[4]

---

[3]    Citations to material supporting facts Ms. Johnson summarizes here and relies on elsewhere in this brief are found in her motion for class certification and related exhibits. *See* ECF No. 44.

[4]    In agreeing to settle this case, Plaintiff took into consideration the risks associated with pursuing TCPA "wrong number" cases through class certification and trial. While Plaintiff and her counsel believe the claims at issue are meritorious, and that Plaintiff would prevail if this matter proceeded to class certification and trial, Defendant denies any liability, and is willing to litigate vigorously. By the time the parties finalized their agreement—which followed more than a year of hard-fought litigation, significant written and expert fact discovery, and depositions discovery—the parties were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing this TCPA case through class certification and trial. Indeed, the parties tested

This includes "wrong number" TCPA class actions. *See Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (certifying a "wrong number" TCPA class over objection); *see also, e.g., Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman, 2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" TCPA classes over objection).[5]

## B. The settlement class satisfies the requirements of Rule 23(a).

For the settlement class to be certified, it must first satisfy all requirements under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and

---

those strengths and weaknesses during an all-day mediation, which ultimately led to the settlement at issue here.

[5]    GDR was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, *Reyes*, and *Johnson*. Additionally, the defendants' petitions to appeal pursuant to Rule 23(f) in *Head*, *Wesley*, and *Johnson* were denied by the Ninth, Tenth, and Seventh Circuits, respectively.

adequacy of representation.

### 1. The settlement class is so numerous that joinder of all members is impracticable.

Rule 23(a) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although the number of class members needed to satisfy this rule is no[t] fixed[,] . . . generally . . . more than forty [is] adequate." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 WL 5608014, at *16 (11th Cir. Aug. 30, 2023). But "[i]t is not necessary that the precise number of class members be known." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000) (Kovachevich, J.). Rather, plaintiffs may "make reasonable estimates with support as to the size of the proposed class." *Id.* And "[t]he Court is given discretion to make assumptions when determining the numerosity of a class." *Id.*

Here, from October 2019 through October 2023, United delivered HouseCalls program-related prerecorded voice messages to 218,628 cellular telephone numbers, each of which United marked as a "wrong number." Against this backdrop, and given information the parties learned through discovery, they estimate that approximately 29,500 cellular telephone numbers will fall within the settlement class definition.

Joinder of all settlement class members is therefore impracticable. *See Lavigne*, 2018 WL 2694457, at *3-4 (finding a proposed "wrong number" TCPA class satisfied numerosity where "Defendants' own call logs . . . identify 38,125 separate phone numbers (both landline and cell phone) that . . . were coded as 'Bad/Wrong Number,'"

and explaining that "[e]ven if only a fraction of the approximately 38,125 are in fact class members, the numerosity requirement here is readily satisfied.").

### 2. Questions of law and fact are common to all members of the settlement class.

Rule 23(a)(2) requires the existence of common questions of law or fact. *See* Fed. R. Civ. P. 23(a)(2). The burden "to satisfy this requirement [i]s a low hurdle." *Sos*, 2023 WL 5608014, at *16. And "[n]ot all factual or legal questions raised in the litigation need be common so long as at least one issue is common to all class members." *Fuller*, 197 F.R.D. at 700. That is, "[a] sufficient nexus is established if the claim or defenses of the class and the class representatives arise from the same event or pattern or practice and are based on the same legal theory." *Id.*

Here, whether United used a prerecorded voice in connection with the calls at issue is a question common to the proposed class. *See Knapper*, 329 F.R.D. at 242 ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of each claim in one stroke."). Additionally, that each member of the proposed class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See id.* ("[A]ll putative class members allegedly suffered the same injury—a receipt of at least one phone call by Defendant in violation of the TCPA. Thus, whether each class member suffered the same injury is also a 'common contention.' . . . Therefore, commonality is satisfied."). What's more, whether liability attaches to wrong-number calls is a question common to the proposed class. *See id.*

(finding that "whether liability attaches for wrong or reassigned numbers" would "produce an answer that is central to the validity of each claim in one stroke").

Questions of law and fact are therefore common to all members of the class. *See Wesley*, 339 F.R.D. at 291-92 (finding "(1) whether Snap used a prerecorded voice in connection with the calls at issue; (2) whether the class members are entitled to the statutorily mandated relief; and (3) whether liability attaches to Snap's wrong number calls" as "common questions [that] will also provide common answers to legal and factual questions for all class members.").

### 3. Ms. Johnson's claims are typical of the claims of the members of the settlement class.

"Class certification also requires that the claims of the named plaintiff be typical of the claims of the class." *Fuller*, 197 F.R.D. at 700. "Typicality is satisfied where the named plaintiff possess[es] the same interest and suffer[ed] the same injury as the [unnamed] class members." *Sos*, 2023 WL 5608014, at *17. "This alignment of interests and injuries exists if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* "Typicality, however, does not require identical claims or defenses." *Id.* "And [d]ifferences in the amount of damages will not defeat typicality, nor will [a] factual variation[,] . . . unless the factual position of the representative markedly differs from that of other members of the class." *Id.*

Here, Ms. Johnson and members of the settlement class were similarly harmed by receiving prerecorded voice messages as non-United members or plan holders. Ms.

Johnson, therefore, possesses the same interests, and seeks the same relief, as do members of her proposed class. Correspondingly, Ms. Johnson's claims are typical of the claims of members of the class. *See Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020) ("Here, Plaintiff asserts the same claims that could be brought by any of the other class members, specifically that Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls regarding a purported debt. Therefore, the typicality requirement is satisfied.").

As well, that the subject calls United placed to Ms. Johnson and class members were wrong-number calls makes Ms. Johnson's claims typical. *See Knapper*, 329 F.R.D. at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members.").

### 4. Ms. Johnson and GDR will protect the interests of the members of the settlement class.

"Federal Rule of Civil Procedure 23(a)(4) requires that the named plaintiffs provide fair and adequate protection for the interests of the class." *Fuller*, 197 F.R.D. at 700. "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and

the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, in response to questions from United's counsel, Ms. Johnson explained her claims against United, and her responsibilities as a class representative.

As well, Ms. Johnson retained GDR, a firm competent in class action litigation, including under the TCPA. Indeed, courts have not only appointed GDR as class counsel in dozens of consumer protection class actions in the past few years alone, but many have also taken care to highlight GDR's wealth of experience and skill. *See* ECF No. 44-22, ¶¶ 11-22. And GDR has, and will continue to vigorously protect the interests of members of the proposed class. Considering this, Ms. Johnson and GDR will fairly and adequately protect the interests of the members of the class.

**C. The settlement class satisfies the requirements of Rule 23(b).**

> **1. The questions of law and fact common to the members of the settlement class predominate over any questions affecting only individual members.**

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "The requirement that common questions of law or fact predominate means the issues in the class action that are subject to generalized proof . . . must predominate over those issues that are subject only to individualized proof." *Herman v. Seaworld Parks & Ent., Inc.*, 320 F.R.D. 271, 295 (M.D. Fla. 2017) (Scriven, J.). "[I]t is not

necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Id.*

Relevant, then, is that "[t]o state a claim under the TCPA for calls made to a cellular phone, a plaintiff must allege that: (1) a call was made to a cell or wireless phone, (2) by the use of any automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (Honeywell, J.). A TCPA defendant, of course, "bears the burden of establishing prior consent." *Id.*

Given as much, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes*, 2020 WL 3642373, at *5.

In short, members of the class are unintended recipients of United's prerecorded voice messages. So because the claims at bar stem from calls to non-United members or plan holders, issues relating to prior express consent do not bear on this matter. *See Head*, 340 F.R.D. at 153 (agreeing "that issues of consent do not defeat the class because class members, by definition, are non-customers of Citibank who did not consent to being robocalled").

And even if issues regarding prior express consent existed here—they do not—common issues would still predominate. *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("The Court agrees . . . that any issues relating to

whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action.").

Moreover, in a wrong-number TCPA class action, issues related to "wrong number" notations do not defeat predominance even were they to exist:

> Defendants also argue that this litigation will devolve into individualized issues . . . . They assert that a call could be coded "Bad/Wrong Number" for many reasons unrelated to the fact that a third party was called. Initially, a number of courts have rejected this theory in "Wrong Number" cases, under similar factual circumstances, at the class certification stage. *See Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501, 503 (S.D. Ind. 2016); *Munday*, 2016 WL 7655807, at *4; *Abdeljalil*, 306 F.R.D. at 309 (rejecting argument that class is not ascertainable because notation in account for "bad number" does not necessarily mean that number belonged to non-account holder); *West v. California Servs. Bureau, Inc.*, 2017 WL 6316823, at *4 (N.D. Cal. 2017) ("Defendant does not persuade. As an initial matter, several district courts have deemed commonality and predominance satisfied in TCPA cases despite the possibility that a substantial proportion of the phone numbers marked as 'wrong number' in defendant's call log databases 'may not have actually been a wrong number.").

*Lavigne*, 2018 WL 2694457, at *8.

And this is especially true where a class—as here—is not defined by reference to the defendant's internal "wrong number" designations. *See Wesley*, 339 F.R.D. at 298 (noting if a class were defined "by reference to the 'Wrong Number' notations . . . the inaccuracy of the [the notations] would raise an individualized issue of consent with the class members," but where a class is not defined "by reference to 'wrong number' calls" any inaccuracy in "wrong number" notations does not raise individualized issues that will predominate).

Additionally, other potential issues—such as "difficult damage calculations, individual determinations of who the telephone user was, when the call was made and

proof that [the defendant] actually made the calls . . . difficult[y] [in] determining the
identity of users . . . [and] the distinct possibility that every record marked as a wrong
number may not have actually been a wrong number"—do not stand in the way of a
finding of predominance. *See Johnson*, 315 F.R.D. at 502 (certifying a "wrong-number"
TCPA class, and rejecting the defendant's contention that individual issues would
"overwhelm the litigation and destroy the required commonality of facts").

**2. A class action is superior to other available methods for the fair and efficient
adjudication of this matter.**

"Superiority . . . asks whether a class action is superior to other available
methods for the fair and efficient adjudication of [claims]." *Andreas-Moses v. Hartford
Fire Ins. Co.*, 326 F.R.D. 309, 319 (M.D. Fla. 2018) (Dalton, Jr., J.). "The inquiry
focuses not on the convenience or burden of a class action suit *per se*, but on the relative
advantages of a class action suit over whatever other forms of litigation might be
realistically available to the plaintiffs." *Id*. Against this backdrop, "Rule 23(b)(3) has
four non-exhaustive factors to consider for superiority: (1) the interest of members of
the class in individually controlling the prosecution or defense of separate actions; (2)
the extent and nature of any litigation concerning the controversy already commenced
by or against members of the class; (3) the desirability or undesirability of
concentrating the litigation of the claims in the particular forum; and (4) the difficulties
likely to be encountered in the management of the class action." *Id*.

From the outset, litigating TCPA claims as part of a class action is generally
superior to litigating them in successive individual lawsuits. *See Reliable Money Ord.,*

*Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd,* 704 F.3d 489 (7th Cir. 2013) ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."). This is, in part, because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because class members' claims are identical, they arise from the same standardized conduct, and they result in uniform damages:

> The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.

Also important, absent a class action thousands of claims like Ms. Johnson's will go unredressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."). Indeed, the court in *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC* explained:

> As Judge Posner once stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). The same principle applies in this case. The amount of damages allegedly is over $100,000 million dollars. The damages for these two plaintiffs are approximately $200.00. A class action seems to be the superior method of challenging the actions of the defendant. There is no other way for the plaintiffs

to address CPAY's alleged behaviors.

No. 8:17CV310, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020).

Additionally, there are unlikely to be serious difficulties in the management of this case as a class action. To be sure, United produced documents identifying the cellular telephone numbers to which it delivered the prerecorded voice messages at issue, as well as the name of each person it intended to reach in doing so. And based on this information, the names and addresses of individuals associated with the cellular telephone numbers to which United delivered prerecorded voice messages and marked with a "wrong number" notation can be identified in a practical and efficient manner. *See Brown v. DirecTV, LLC*, 330 F.R.D. 260, 273-74 (C.D. Cal. 2019) (certifying a TCPA class action and discussing the use of the defendant's internal wrong-number notations to identify potential class members).

A class action, therefore, is the superior method to adjudicate this matter. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 690 (S.D. Fla. 2013) ("[T]he Court finds that the large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating the plaintiffs' [TCPA] claims.").

## II.    The settlement is fair, reasonable, and adequate, under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings.
> First, counsel submit the proposed terms of settlement and the judge makes a
> preliminary fairness evaluation. In some cases, this initial evaluation can be
> made on the basis of information already known, supplemented as necessary
> by briefs, motions, or informal presentations by the parties. If the case is
> presented for both class certification and settlement approval, the certification
> hearing and preliminary fairness evaluation can usually be combined. . . . The
> judge must make a preliminary determination on the fairness, reasonableness,
> and adequacy of the settlement terms and must direct the preparation of notice
> of the certification, proposed settlement, and date of the final fairness hearing.

Manual For Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte &

Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice of the class

action settlement has been issued, the court must then hold a final fairness hearing to

determine whether the proposed settlement is truly fair, reasonable, and adequate. *See*

Manual For Complex Litigation § 21.633-34; Newberg, § 11.25.

Considering as much, preliminary approval requires only that a court evaluate

whether the proposed settlement was negotiated at arm's-length and is within the

range of possible litigation outcomes such that "probable cause" exists to disseminate

notice and begin the formal fairness process. *See* Manual For Complex Litigation §

21.632-33; *see also Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 WL

12533121, at *6 (S.D. Fla. Aug. 3, 2015) ("The purpose of preliminary evaluation of

proposed class action settlements is to determine whether the settlement is within the

'range of reasonableness.'").

No matter, and with the understanding that a full fairness determination is not

necessary at this preliminary approval stage, the Eleventh Circuit identified six factors

for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

### A. The settlement was the product of arm's-length negotiations by experienced counsel, and the result of mediation before a highly regarded neutral.

The parties reached an agreement to resolve this matter only after mediating Ms. Johnson's claims against United with Bruce Friedman of JAMS.[6] The settlement is therefore not a product of collusion but was the result of arm's-length settlement negotiations, as directed by an experienced class action mediator. *See James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *2 (M.D. Fla. Nov.

---

[6]    *See* https://www.jamsadr.com/bruce-friedman/ (last accessed Jan. 20, 2025).

22, 2016) ("No indication appears that the settlement resulted from collusion. Rather, the parties settled with the assistance of court-appointed mediator[.]").

### B. The complexity, expense and likely duration of the litigation favors preliminary approval of the settlement.

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources").

Here, significant work lay ahead, including briefing on Ms. Johnson's motion for class certification, and competing motions for summary judgment. Given the considerable work already performed in this matter—and the work left to perform, including any appeals—settlement here is warranted. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The factual record is sufficiently developed to enable Ms. Johnson and GDR to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have

accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties engaged in significant discovery, focused both on Ms. Johnson's individual claims and on those of absent settlement class members. The settlement was, therefore, consummated when the parties were well-informed regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D.    The probability of Ms. Johnson's success on the merits and the range of possible recovery favor preliminary approval.

Courts additionally consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the

potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

While Ms. Johnson believes strongly in her claims, by any objective assessment she faced real hurdles to obtaining class-wide relief. Despite these obstacles, and with the assistance of a highly respected mediator, Ms. Johnson negotiated a settlement that compares extremely favorably to other TCPA class action settlements.

To be sure, the settlement—which breaks down to over $11 per potential settlement class member ($3,495,000 / 295,000 = $11.85)—compares favorably with analogous settlements under the TCPA, all of which various district courts approved. *See, e.g.*, *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James*, 2016 WL 6908118 ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v.*

*World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

As well, the settlement is expected to meet or exceed, on a per-claimant recovery basis, other recently approved TCPA class action settlements. Indeed, GDR estimates—based on historical claims rates—that after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, and reasonable attorneys' fees, participating settlement class members who submit approved claims will receive between $50 and $125 each. This exceeds comparable figures in other approved TCPA class settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.*

characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the settlement provides class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g., Palm Beach Golf Center-Boca, Inc.*, 311 F.R.D. at 699 (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation.

### E. The opinions of Ms. Johnson and GDR favor preliminary approval.

"In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel." *In re Domestic Air Transp.*, 148 F.R.D. at 312-13.

Here, GDR is highly experienced in class action litigation, particularly in cases

under the TCPA. *See* ECF No. 44-22, ¶¶ 9-11. And GDR firmly believes that the settlement is fair, reasonable, adequate, and in the best interests of class members. *Accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

**F.    The settlement treats settlement class members equitably.**

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, all settlement class members have the same claims. And the settlement provides that each participating class member will receive an equal portion of the settlement fund. Additionally, the release affects each class member in the same way.

**III.   The proposed notice plan satisfies Rule 23(c)(2)(B).**

"Rule 23 requires the court to direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 254 (11th Cir. 2009). "However, the 'best practicable' notice standard does not require that every class member actually receive notice." *Morgan v. Pub. Storage*,

301 F. Supp. 3d 1237, 1261 (S.D. Fla. 2016).

Here, Verita will send court-approved notice to potential class members by direct mail. In addition, it will create a dedicated website that will contain pertinent information, such as the operative complaint and the settlement agreement. Individuals receiving notice will then have to determine whether they are *bona fide* class members affected by this case so they can decide whether to submit a claim or exclude themselves from the settlement.

In the end, this method of class notice and class member participation is industry standard in TCPA class actions like this one. *See Bonoan v. Adobe Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) (analyzing a notice plan proposed by Ms. Johnson's expert, which is materially indistinguishable from the plan she proposes in connection with this matter, and finding: "The proposed notice and method for notifying the settlement class members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice.").

## IV.  This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Here, the parties respectfully request that this Court set a date for a final fairness hearing, at this Court's convenience, approximately four months after it preliminarily approves the settlement.

## Conclusion

Ms. Johnson respectfully requests that this Court enter the accompanying order—agreed to by the parties—certifying the settlement class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Ms. Johnson as the settlement class representative, and Aaron Radbil of GDR as class counsel; approving and directing notice of the settlement to settlement class members; and setting a final fairness hearing date.

Dated: January 30, 2025          */s/ Aaron D. Radbil*
                                 Aaron D. Radbil (lead counsel)
                                 James L. Davidson
                                 Jesse S. Johnson
                                 GREENWALD DAVIDSON RADBIL PLLC
                                 5550 Glades Road, Suite 500
                                 Boca Raton, FL 33431
                                 Tel: (561) 826-5477
                                 aradbil@gdrlawfirm.com
                                 jdavidson@gdrlawfirm.com
                                 jjohnson@gdrlawfirm.com

                                 *Counsel for Plaintiff and the proposed class*