# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

Elaine Johnson, *on behalf of herself and others similarly situated*,

            Plaintiff,

    v.

United HealthCare Services, Inc.,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No.: 5:23-cv-00522

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND LITIGATION EXPENSES

**Introduction**

Elaine Johnson ("Plaintiff") and United HealthCare Services, Inc. ("Defendant") agreed to resolve this matter for the benefit of a nationwide class ("Settlement Class"). More specifically, Defendant agreed to create an all-cash, non-reversionary $3,495,000 common fund ("Common Fund") to compensate Settlement Class members for claims under the Telephone Consumer Protection Act ("TCPA"), as well as similar state laws and regulations, stemming from the subject artificial or prerecorded voice calls to cellular telephone numbers regarding the Optum® HouseCalls program.

On February 10, 2025, this Court preliminarily approved the parties' settlement ("Settlement"). *See* ECF No. 52. In turn, the court-appointed notice and claims administrator—Verita Global, LLC ("Verita")—disseminated court-approved notice of the Settlement ("Class Notice").

In line with the Class Notice, court-appointed class counsel ("Class Counsel") request an award of attorneys' fees equal to one-third of the Common Fund, or $1,165,000. As well, Class Counsel request reimbursement of costs and litigation expenses totaling $37,620.09.

Class Counsel's requests are fair, reasonable, justified, and in line with awards approved in analogous TCPA class actions. Moreover, to date, no Settlement Class member has objected to any part of the Settlement, or to Class Counsel's requests for attorneys' fees, costs, and litigation expenses.

## Argument

**I.    Class Counsel's request for an award of attorneys' fees equal to one-third of the Common Fund is fair, reasonable, and justified.**

The Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit agrees: "Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R. Civ. P. 23(e)).

Relevant, then, is that "common fund fee awards should be computed as a fair percentage of the fund." *Id*. at 774 (citing *Blum v. Stenson*, 465 U.S. 886, 900 (1984)); *see also Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 689 (M.D. Ala. 1988) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund bases."). And with reference not only to *Blum*, but to other decisions endorsing a percentage of the fund calculation, the Eleventh Circuit stated: "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id*. (rejecting the use of lodestar analysis for determination of fees in common fund cases); *see also Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2008 WL 11234103, at *2 (N.D. Ga. Mar. 4, 2008) ("Since

1991, the Eleventh Circuit has required district courts in this circuit to follow the 'percentage of the fund' approach to awarding fees in class action cases.").

"[T]here is[, however,] no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee[.]" *Id*. Rather, "the amount of any fee must be determined upon the facts of each case." *Id*. To make this determination, "the *Johnson* factors [may be] appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condo. Ass'n, Inc.*, 946 F.2 at 775. In addition, other factors such as "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action," are also pertinent. *Id*.

Against this backdrop, "[t]o avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Wreyford v. Citizens for Transp. Mobility, Inc.*, No. 1:12-CV-2524-JFK, 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014).

Here, Class Counsel request an award of attorneys' fees equal to one-third of the Common Fund, or $1,165,000.

### A. The *Johnson* factors support Class Counsel's request for an award of attorneys' fees equal to one-third of the Common Fund.

While "factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary . . . . the *Johnson* factors

3

continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I Condo. Ass'n, Inc.*, 946 F.2 at 775; *see also Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *2 ("In deciding what percentage of the fund to award, the court may consider the twelve factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)").

The *Johnson* factors are: the amount involved and the results obtained; the time and labor required; the novelty and difficulty of the questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation, and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Johnson*, 488 F.2d at 717-19.

### 1. Class Counsel obtained an excellent result.

"The most important element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 351; *see also Mashburn*, 684 F. Supp. at 693 ("The critical element in determining the appropriate fee to be awarded class counsel out of a common fund is the result obtained for the class through the efforts of such counsel."); *accord Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) ("The result achieved is a major factor to consider in making a fee award.").

Here, in the face of many significant legal hurdles, Class Counsel obtained an excellent result for the class. Indeed, the expected per-claimant recovery of $50 to $125 exceeds comparable figures in other approved TCPA class action settlements. *See, e.g.*, *Rose v. Bank of Am. Corp.*, 2014 WL 4273358 at *10 (N.D. Cal. Aug. 29, 2014) ($20-$40 per claimant); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, ECF No. 44 (S.D. Fla. Nov. 1, 2019) (less than $9 per claimant); *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, ECF No. 86 (S.D. Fla. Jan. 16, 2020) ($10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claimant).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the Settlement provides Settlement Class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will

5

bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, Settlement Class members will receive money they otherwise likely never would have pursued on their own.

So for a variety of reasons, the Settlement represents an objectively excellent recovery for the Settlement Class.

### 2.  The time and labor required to resolve this matter were significant.

Class Counsel expended a significant amount of time and labor to reach the Settlement. *See* Declaration of Aaron D. Radbil, attached as Exhibit A, ¶¶ 44-45 (summarizing Class Counsel's efforts in approximately three dozen bullet points). And more work remains to be done.

### 3.  The questions underlying this matter were both difficult and novel.

There exists "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

Here, Defendant presented a variety of defenses, which gave rise to many legal questions, most of which were difficult, and several of which were novel. Indeed, Defendant raised twenty separate affirmative defenses to Plaintiff's claims by way of its answer to Plaintiff's second amended class action complaint alone. *See* ECF No. 42 at 13-18.

As well, highlighting the difficult road Plaintiff faced, Defendant also called attention to more than a handful of decisions issued by Florida district courts that refused to certify wrong-number TCPA class actions like this one. *See, e.g.*, *Morgan v. Orlando Health, Inc.*, No. 6:17-CV-1972-CEM-GJK, 2021 WL 12100347, at *1 (M.D. Fla. Dec. 8, 2021) (Mendoza, J.); *Morgan v. Adventist Health Sys./Sunbelt, Inc.*, No. 618CV1342ORL78DCI, 2020 WL 1674307, at *1 (M.D. Fla. Jan. 15, 2020) (Berger, J.); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 272 (M.D. Fla. 2019) (Berger, J.); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 456 (M.D. Fla. 2018) (Jung, J.); *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313 FTM-99CM, 2017 WL 7194275, at *2 (M.D. Fla. Sept. 29, 2017) (Steele, J.); *accord Shamblin v. Obama for Am.*, No. 8:13-CV-2428-T-33TBM, 2015 WL 1909765, at *4 (M.D. Fla. Apr. 27, 2015) (Covington, J.).

A path to success for Plaintiff was therefore far from certain and paved with difficult questions.

### 4. Class Counsel relied on particular skill and experience in performing the legal services required.

"[T]he prosecution and management of a complex national class action requires unique legal skills and abilities." *Columbus Drywall & Insulation*, 2012 WL 12540344,

at *4; *see also Swift v. BancorpSouth Bank*, No. 1:10-CV-00090-GRJ, 2016 WL 11529613, at *17 (N.D. Fla. July 15, 2016) (same); *In re Omnivision Techs., Inc. Sec. Litig.*, No. 5:11-CV-05235-RMW, 2015 WL 3542413, at *2 (N.D. Cal. June 5, 2015) (same); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 362 (E.D.N.Y. 2010) (same).

Here, Class Counsel relied on their skill and experience in litigating Plaintiff's claims and negotiating the Settlement. Certainly, Class Counsel has a particular set of skills honed over years of practice, during which they have been appointed as class counsel in a host of class actions under the TCPA. *See* Exhibit A, ¶ 9. Noteworthy, the combined recovery for consumers resulting from these TCPA matters exceeds $185 million. *See id.*, ¶ 10. Moreover, in the past several years Class Counsel has been appointed as class counsel in dozens of other consumer protection class actions across the country. *See id.*, ¶ 11. Additionally, Class Counsel's notable federal appellate decisions furthering consumer protection are numerous. *See id.*, ¶ 26.

### 5. Acceptance of this matter precluded Class Counsel from taking on other employment.

"[S]ubstantial and concentrated time investment by plaintiffs' counsel would tend to preclude other lucrative opportunities, thus warranting a higher percentage of the fund." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *2; *see also Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, No. 1:18-CV-423, 2020 WL 92092, at *3 (M.D.N.C. Jan. 8, 2020) ("Class Counsel's law firms are small enough that the choice to take one case over another affects the firm's ability to accept other paying work, and the work involved in this case was extensive."); *Slipchenko v. Brunel Energy,*

8

*Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *21 (S.D. Tex. Jan. 23, 2015) ("By accepting this case, class counsel necessarily limited their ability to work on other cases. Four of Cohen Milstein's seven-lawyer Employee Benefits Practice Group spent more than 50 hours on this case."); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *5 (D. Colo. Dec. 22, 2010) ("Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time."); *Johannssen v. Dist. No. 1*, No. AMD 96-2355, 2001 WL 770987, at *4 (D. Md. July 10, 2001), *aff'd in part, remanded in part sub nom. Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159 (4th Cir. 2002) ("The extensive time spent on this case could certainly have been spent handling other cases; thus, involvement in this litigation carried with it significant opportunity costs.").

Here, Class Counsel's firm is small. It includes just four partners. *See* https://www.gdrlawfirm.com/attorneys. The amount of work that Class Counsel can handle at any given time is accordingly limited. As such, Class Counsel accrued opportunity costs as a result of litigating this matter.

**6.  A customary fee in a common fund case is approximately one-third of the economic benefit bestowed on the class.**

Class Counsel's request for an award of attorneys' fees in an amount of one-third of the common fund is well within the range of attorneys' fee awards affirmed by the Eleventh Circuit and approved by district courts within it. *See, e.g.*, *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33

1/3% of a $40 million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99–1317–MDL–Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement fund of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95–2152–Civ–Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement fund of $77.5 million).

Importantly, this analysis does not differ when limited to TCPA class actions. *See, e.g.*, *Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-CV-25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) ("The Court awards one-third of the Settlement Fund for Attorneys' Fees[.]"); *Soto v. The Gallup Org.*, No. 13-cv-61747, ECF No. 95 (S.D. Fla. Nov. 24, 2015) (awarding a fee of 33 1/3%, inclusive of costs); *Guarisma v. ADCAHB Med. Coverages, Inc.*, No. 13-cv-21016, ECF No. 95 (S.D. Fla. June 24, 2015) (awarding a fee of 33 1/3%, plus costs).[1]

---

[1] *Accord Prater v. Medicredit, Inc.*, No. 4:14-CV-00159-ERW, 2015 WL 8331602, at *3 (E.D. Mo. Dec. 7, 2015) (awarding 33 1/3%, plus costs); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33%); *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215, ECF No. 63 (N.D. Ill. Jan. 16, 2014) (awarding more than 33 1/3%); *Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531, ECF No. 67 (S.D. Ill. Sept. 8, 2010) (awarding 33 1/3%, plus costs); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-5456, ECF No. 424 (N.D. Ill. Oct. 21, 2011) (awarding 33%, plus costs).

Class Counsel's attorneys' fee award request, therefore, comports with customary fee awards in similar cases.

### 7. Class Counsel litigated this matter on a contingent basis.

"Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award." *Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *3 (quoting *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992)). This is, in part, because even in ordinary cases "uncertain is the outcome," *id.*, and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Id.* With this in mind, the Southern District of Florida observed:

> A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd,* 899 F.2d 21 (11th Cir. 1990) (internal citation omitted).

And in the context of class actions, the inherent risk of non-payment is multiplied:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson v. Citizens Bank*, No. 212CV10267DPHRSW, 2014 WL 12738263, at *7 (E.D. Mich. Jan. 31, 2014).

Here, Plaintiff entered into a contingent attorneys' fee agreement with Class Counsel. *See* Exhibit A, ¶ 42. In particular, the agreement permitted Class Counsel to apply to this Court for an award of attorneys' fees in the event that a common fund was established for the benefit of a class. Of note, the agreement also stated that Class Counsel would seek no more than 35% of any common fund created as compensation for work performed in connection with this matter.

Thus, that the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1215 ("This factor weighs heavily in favor of a 31 and 1/3% percentage fee for Class Counsel because the fee in this action has been completely contingent."); *accord Been v. O.K. Indus., Inc.*, No. CIV–02–285–RAW, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011) ("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.").

### 8. This matter was undesirable to many attorneys.

That Class Counsel worked without payment for nearly a year-and-a-half makes this matter undesirable to many. *See Columbus Drywall & Insulation, Inc.*, 2008 WL 11234103, at *4 (explaining that the prospect of expending significant time and money

12

with no assurance of payment, to litigate a case against well-represented defendants, would deter many lawyers from assuming representation).

So although Class Counsel ultimately obtained a result that any attorney should be proud of, the road leading to a resolution here was paved with large quantities of time and money that would deter many attorneys from accepting this matter. *See* Exhibit A, ¶¶ 44-45. And this is especially true given the quality of legal representation that Defendant has historically obtained, and did obtain in this matter.

### 9. Additional factors support Class Counsel's request for an award of attorneys' fees.

"Attorneys who undertake the risk to vindicate legal rights that may otherwise go unredressed function as 'private attorneys general.'" *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217. This is particularly important here, where, as previously noted, damages awards under the TCPA—a statute that does not include a fee-shifting provision—are often too small to incentivize individual actions. And given such a circumstance, "courts treat successfully fulfilling [the private attorney general role] as a . . . factor when awarding class counsel attorneys' fees." *Id.* (citing *Ressler*, 149 F.R.D. at 657 (noting that when class counsel act as private attorneys general, "public policy favors the granting of counsel fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions")).

The public policy fostered by the private attorney general role is, of course, frustrated where a large defendant has the ability to overwhelm, for example, small-firm plaintiffs' lawyers who typically represent consumers in actions under the TCPA.

13

This is a reality that results from the fact that, as noted above, Class Counsel were required to risk a very significant amount of time, over the course of a year-and-a-half, as well as out-of-pocket costs and expenses, to reach the result obtained here. And "[u]nless that risk is compensated with a commensurate reward, few firms, no matter how large or well financed, will have any incentive to represent the small stake holders in class actions against corporate America, no matter how worthy the cause or wrongful the defendant's conduct." *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1217.

Accordingly, a significant contingent attorneys' fee award is appropriate where "absent an award of [such fees] . . . the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self interest rather than obtaining real justice on behalf of their injured clients." *Id.* at 1217-18 (citing John J. Coffee, Jr., *Rescuing the Private Attorney General: Why the Model of the Lawyer as Bounty Hunter is Not Working*, Maryland Law Review, 216, 225-26 (1983) (the private attorney general provides an important mechanism "to enforce the federal antitrust and securities laws, to challenge corporate self-dealing in derivative actions, and to protect a host of other statutory policies," but in the absence of appropriate incentive structures, "litigated judgments are few, cheap settlements are common, and . . . the private watchdog can be bought off by tossing him the juicy bone of a higher-than-ordinary fee award in return for his acceptance of an inadequate settlement")).

With this in mind, and considering the unique circumstances of this matter—the lack of incentive for aggrieved consumers to bring individual suits, that Defendant is unquestionably a large company with substantial means, and that Defendant employs excellent legal counsel—Class Counsel's request for attorneys' fees is supported by the economics involved in litigating this matter.

## II. Class Counsel is entitled to reimbursement of $37,620.09 in costs and litigation expenses.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019), *appeal dismissed sub nom. Carlin v. Spooner*, 808 F. App'x 571 (9th Cir. 2020); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of . . . reasonable litigation expenses from that fund."). And "[t]he prevailing view is that expenses are awarded in addition to the fee percentage." *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2579201, at *4 (M.D.N.C. June 24, 2019).

"Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research." *Id.*; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (awarding as reasonable and necessary, reimbursement for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and

investigators; and 9) mediation fees"); *accord* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.") (emphasis added).

Here, Class Counsel requests the reimbursement of $37,620.09 in costs and litigation expenses necessarily incurred to resolve this matter on behalf of Settlement Class members. These expenses include filing fees, process server fees, deposition transcript costs, expert fees, travel and lodging expenses, meal expenses associated with case-related travel, and mediation fees. *See* Exhibit A, ¶ 49. Because Class Counsel's costs and litigation expenses are eminently reasonable in a class action like this, and were necessary to the successful resolution of this action, *see Carlin*, 380 F. Supp. 3d at 1024, Class Counsel request that this Court approve their reimbursement.

## Conclusion

Class Counsel and Plaintiff respectfully request that this Court approve an award of attorneys' fees in the amount of one-third of the common fund, or $1,165,000, and reimbursement of litigation costs and expenses in the amount of $37,620.09

Dated: March 27, 2025          */s/ Aaron D. Radbil*
                                Aaron D. Radbil (lead counsel)
                                James L. Davidson
                                Jesse S. Johnson
                                GREENWALD DAVIDSON RADBIL
                                PLLC
                                5550 Glades Road, Suite 500
                                Boca Raton, FL 33431
                                Tel: (561) 826-5477
                                aradbil@gdrlawfirm.com

16

jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the proposed class*

17