## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| Elaine Johnson, *on behalf of herself and others similarly situated*, | ) ) ) | Civil Action No.: 5:23-cv-00522 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| United HealthCare Services, Inc., | ) ) ) | |
| Defendant. | ) | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## Introduction

Elaine Johnson and United HealthCare Services, Inc. ("United") agreed to resolve this matter for the benefit of a nationwide class. Specifically, the parties agreed that United would create a non-reversionary settlement fund in the amount of $3,495,000 to compensate settlement class members for claims under the Telephone Consumer Protection Act ("TCPA") and related state law claims. This Court preliminarily approved the settlement on February 10, 2025. *See* ECF No. 52. And the court-appointed claims administrator—Verita Global, LLC ("Verita")—disseminated court-approved settlement class notice on March 14, 2025. *See* Declaration of Jeff Moore Re: Notice Procedures, attached as Exhibit 1, ¶ 9.

After receiving notice of the settlement, 13,533 settlement class members submitted approved claims for their *pro rata* share of the settlement fund. *See* Exhibit 1, ¶ 13. Accordingly, after deducting from the settlement fund the cost of notice to potential settlement class members and claims administration; litigation costs and expenses, subject to this Court's approval; and, reasonable attorneys' fees calculated as a percentage of the settlement fund, subject to this Court's approval (together "Costs and Fees"), each participating settlement class member will receive over $146.

Moreover, no settlement class member excluded himself or herself from the settlement, and no settlement class member objected to the settlement. Considering this, Ms. Johnson respectfully requests that this Court finally approve the settlement, and enter a final judgment and order.

United does not oppose the relief Ms. Johnson now requests.

## Summary of the Settlement

The settlement resolves this matter on behalf of the following class:

All persons and entities throughout the United States (1) to whom United HealthCare Services, Inc. placed a call regarding the Optum® HouseCalls program relating to a UnitedHealthcare plan, (2) directed to a cellular telephone number customarily used by a person who is not and was not a UnitedHealthcare member or plan holder, (3) in connection with which United HealthCare Services, Inc. used an artificial or prerecorded voice, (4) from October 12, 2019 through February 10, 2025.

To compensate settlement class members, United created a non-reversionary settlement fund in the amount of $3,495,000. Paid from the settlement fund will be compensation to settlement class members, as well as Costs and Fees.

Verita mailed notice of the settlement directly to potential settlement class members, together with a detachable claim form that settlement class members could use to submit claims. Verita also established a dedicated settlement website that provides information about the settlement, and through which settlement class members could submit claims electronically.

Each settlement class member who submitted an approved claim is entitled to a *pro rata* share of the non-reversionary settlement fund after deducting Costs and Fees.

Any settlement class member who wished to exclude himself or herself from the settlement was able to submit a request for exclusion. Likewise, any settlement class member who wished to object to the settlement was able to submit an objection.

Upon this Court's entry of a final judgment, Ms. Johnson and each settlement class member will release and forever discharge certain claims they have against United under the TCPA and related state laws.

## Claims Administration

Verita delivered notice of the settlement to potential settlement class members. The resulting claims, lack of exclusions, and lack of objections, demonstrate not only the effectiveness of the notice, but also settlement class members' satisfaction with the settlement.

*Direct Mail Notice*: Verita caused postcard notices with detachable claim forms to be mailed to potential settlement class members that Verita identified by performing a reverse lookup process on telephone numbers United provided to it. *See* Exhibit 1, ¶¶ 6-9.

*Settlement Website*: Verita established and maintains a dedicated settlement website—www.OptumHouseCallsTCPAClassActionSettlement.com—which includes information pertinent to settlement class members as well as answers to frequently asked questions. See *id.*, ¶ 11. Verita made the settlement website live on March 14, 2025. *See id.*

*Toll-Free Hotline*: Verita established and maintains a toll-free telephone number—(833) 419-3898—for settlement class members to obtain information about the settlement. *See id.*, ¶ 12. Verita activated the toll-free telephone number on March 14, 2025. *See id.*.

*Claims*: 13,533 settlement class members submitted approved claims.[1] *See id.*, ¶ 13.

---

[1]    The parties agreed to accept late, but otherwise valid claims.

*Objections*: 0 settlement class members objected to the settlement. *See id.*, ¶ 16.

*Exclusions*: 0 settlement class members excluded themselves from the settlement. *See id.*, ¶ 15.

*Class Action Fairness Act Notice*: United served the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. No government official, state or federal, objected to the settlement. *See* Exhibit 1, ¶¶ 2-5.

**Argument**

## I. This Court's preliminary decision to certify the settlement class remains sound.

This Court previously found "that this action satisfies the applicable prerequisites for class action treatment under Rule 23[.]" ECF No. 52 at 2. Nothing has since changed to warrant a departure from this Court's reasoning.

## II. The settlement is fair, reasonable, and adequate, under Rule 23(e).

The Eleventh Circuit identified six factors for consideration in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement. *Leverso v. SouthTrust Bank of AL., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).

As well, Rule 23(e) mandates consideration of several additional factors,

including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate.

### A. The settlement was the product of arm's-length negotiations by experienced counsel, and the result of mediation before a highly regarded neutral.

The parties reached an agreement to resolve this matter only after mediating Ms. Johnson's claims against United with Bruce Friedman of JAMS.[2] The settlement is therefore not a product of collusion but was the result of arm's-length settlement negotiations, as directed by an experienced class action mediator. *See James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("No indication appears that the settlement resulted from collusion. Rather, the parties settled with the assistance of court-appointed mediator[.]").

### B. The complexity, expense and likely duration of the litigation favors final approval of the settlement.

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002); *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (noting "a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial

---

[2]    *See* https://www.jamsadr.com/bruce-friedman/ (last accessed May 30, 2025).

resources").

Here, absent settlement, significant work lay ahead, including briefing on Ms. Johnson's motion for class certification, and competing motions for summary judgment. Given the considerable work already performed in this matter—and the work left to be performed absent settlement, including any appeals—settlement here is warranted. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349 (S.D. Fla. 1982), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial").

### C. The factual record was sufficiently developed to enable Ms. Johnson and class counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties engaged in significant discovery, focused both on Ms. Johnson's individual claims and on those of absent settlement class members. The settlement was, therefore, consummated when the parties were well-informed

regarding the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### D. The probability of Ms. Johnson's success on the merits and the range of possible recovery favor final approval.

Courts additionally consider "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). However, that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350. This is because a settlement must be evaluated in light of the attendant risks with litigation. *Id.* These factors also weigh in favor of the settlement here.

While Ms. Johnson believes strongly in her claims, by any objective assessment she faced real hurdles to obtaining class-wide relief. Despite these obstacles, and with the assistance of a highly respected mediator, Ms. Johnson negotiated a settlement that compares favorably to other TCPA class action settlements.

To be sure, the settlement exceeds, on a per-claimant recovery basis, other

approved TCPA class action settlements. Indeed, after deducting Costs and Fees, participating settlement class members who submitted approved claims will receive just over $146 each. This surpasses comparable figures in other approved TCPA class settlements. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that ultimately distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

What's more, the settlement provides settlement class members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf*

*Center-Boca, Inc.*, 311 F.R.D. at 699 (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, settlement class members will receive money they otherwise would have likely never pursued on their own.

In the end, the settlement constitutes an objectively favorable result for settlement class members, and outweighs the mere possibility of future relief after protracted and expensive litigation.

### E. The opinions of Ms. Johnson and class counsel favor final approval.

"In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel." *In re Domestic Air Transp.*, 148 F.R.D. at 312-13.

Here, class counsel ("GDR") is highly experienced in class action litigation, particularly in cases under the TCPA. *See* ECF No. 44-22, ¶¶ 9-11. And GDR firmly believes that the settlement is fair, reasonable, adequate, and in the best interests of class members. *Accord Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement.").

**F. The reaction of absent settlement class members, and the lack of any objection to the settlement, supports final approval.**

That no settlement class member excluded himself or herself from the settlement, that no settlement class member objected to the settlement, and that no government official objected to the settlement, strongly supports final approval of the settlement. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.*, No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement"); *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

**G.    The settlement treats settlement class members equitably.**

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

Here, all settlement class members have the same claims. And the settlement provides that each participating settlement class member will receive an equal portion of the settlement fund. Additionally, the release affects each settlement class member in the same way.

**III.    Distribution of settlement class notice more than satisfied due process requirements.**

This Court previously found that Ms. Johnson's proposed settlement class notice plan "meet[s] the requirements of Rule 23(c)(2)(B) and due process, constitute[s] the best notice practicable under the circumstances, and constitute[s] due and sufficient notice to all persons and entities entitled to the notice." ECF No. 52 at 10. It then directed Verita to execute the proposed notice plan. *See id*. And following this Court's instruction, Verita did just that. *See generally* Exhibit 1.

As a result, 13,533 settlement class members submitted approved claims. This amounts to a claims rate of over 5.0% percent of *all potential settlement class members*.

11

More poignantly, that 13,533 settlement class members submitted approved claims means that over 45% of the estimated 29,500 settlement class members, *see* ECF No. 51-1 at 5 ("Plaintiff and Defendant estimate that approximately 29,500 cellular telephone numbers will fall within the class definition."), submitted approved claims. This, of course, strongly supports final approval of the settlement. *See, e.g.*, *Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-CV-05486-JCS, 2018 WL 8949777, at *4 (N.D. Cal. Oct. 15, 2018) (collecting cases approving settlements with claims rates between 2% and 4%); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 WL 1744342, at *5 (N.D. Cal. Apr. 15, 2015) (claims rate of 1.9% for monetary portion of settlement); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (2.5% claims rate); *accord Keil v. Lopez*, 862 F.3d 685, 696-97 (8th Cir. 2017) ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

## Conclusion

Ms. Johnson respectfully requests that this Court finally approve the settlement and enter a final judgment and order in the form agreed to by the parties and submitted concurrently.

Dated: May 30, 2025          */s/ Aaron D. Radbil*
                            Aaron D. Radbil (lead counsel)
                            James L. Davidson
                            Jesse S. Johnson
                            GREENWALD DAVIDSON RADBIL
                            PLLC
                            5550 Glades Road, Suite 500
                            Boca Raton, FL 33431
                            Tel: (561) 826-5477

aradbil@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

*Counsel for Plaintiff and the settlement class*